JOHN W. HUBER, United States Attorney (#7226)
KEVIN L. SUNDWALL, Assistant United States Attorney (#6341)
JAMIE THOMAS, Assistant United States Attorney (#9420)
LAKE DISHMAN, Assistant United States Attorney (#16274)
Attorneys for the United States of America
111 South Main Street, Ste. 1800 • Salt Lake City, Utah 84111
Telephone: (801) 524-5682

FILED
U.S. DISTRICT COURT

2019 OCT 24  A 11: 43

DISTRICT OF

SEALED

BY CLERK

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          vs.<br><br>WILLIAM SHAYNE MURDOCK and<br>RYAN LEE MOWER,<br><br>                    Defendants.<br><br>Case: 2:19-cr-00392<br>Assigned To : Nielson, Howard C., Jr<br>Assign. Date : 10/24/2019<br>Description: | INDICTMENT<br><br>VIOLATIONS:<br><br>Counts 1-5: 18 U.S.C. § 1343<br>(Wire Fraud)<br><br>Count 6: 18 U.S.C. § 1956<br>(Promotional Money Laundering)<br><br>Count 7: 18 U.S.C. § 1956<br>(Concealment Money Laundering)<br><br>Counts 8-10: 18 U.S.C. § 1957<br>(Money Laundering - Spending) |

The Grand Jury charges:

## BACKGROUND

At all times relevant to the Indictment:

1.      FedEx Ground Package System, Inc., more commonly known as FedEx

Ground ("FXG"), was a package transportation and delivery company headquartered in

1

Pennsylvania. FXG operated throughout the United States, including Utah. It was a subsidiary of FedEx Corp., headquartered in Tennessee.

2.      To move packages across the country, FXG operated approximately thirty-nine hubs, or distribution centers, across the United States.

3.      One of FXG's hubs was located in North Salt Lake, Davis County, Utah.

4.      As part of its business model, FXG contracted with local trucking companies, known as contracted service providers ("CSPs"), to transport packages on behalf of FXG.

5.      WILLIAM SHAYNE MURDOCK, ("MURDOCK") was a resident of Cache County, Utah.

6.      MURDOCK owned several trucking companies incorporated in the State of Utah including WM Transportation Inc. ("WM"), MSD Transportation, Inc. ("MSD"), Clear Line Transportation, Inc. ("Clear Line") and Troon Transportation, Inc. ("Troon").

7.      RYAN LEE MOWER ("MOWER") was a resident of Davis County, Utah.

8.      MOWER was the Senior Linehaul Manager at the North Salt Lake FXG hub. He was FXG's highest-ranking employee in Utah from at least 2008 to October 2019. His primary responsibilities included overseeing the FXG CSPs and ensuring each complied with FXG policies and regulations.

### SCHEME AND ARTIFICE TO DEFRAUD

9.      The main object of the scheme and artifice to defraud FXG by MURDOCK and MOWER was to exploit MOWER's position within FXG in order to unfairly grow, give undue preferential treatment to, and protect MURDOCK's trucking operations so as

2

to make MURDOCK's businesses as lucrative as possible thereby enriching MURDOCK
and MOWER

10.     Sometime on or before February 5, 2014, MURDOCK began paying
MOWER bribes.  In exchange, MURDOCK asked for and received favors, preferential
treatment, and assistance in defrauding FXG.

11.     FXG has a strict no bribery policy in order to promote a culture of honesty
and integrity.  As part of the CSP contract, FXG reserves the right to terminate a CSP's
contract if the CSP engages in bribery or corruption.

12.     When MURDOCK signed the contract with FXG, he agreed to conduct all
business activities with honesty and integrity, and to comply with all federal, state and
local laws.  He also agreed that FXG could terminate the contract if either he or the CSP
violated any of these provisions of the contract.

13.     MOWER understood that accepting bribes would result in FXG terminating
his employment.

14.     Since at least February 5, 2014, MURDOCK and MOWER hid their
corrupt relationship from FXG.

15.     In return for money, MURDOCK exploited MOWER's position at FXG to
fraudulently grow and maintain his businesses in several ways.

**Fraudulently Obtaining Assigned Runs**

16.     First, MURDOCK used MOWER's position to game FXG's process
governing the awarding of new runs to FXG CSPs.

3

17.    A run is an overland trucking route between two or more places, between which FXG needs packages transported by a CSP.  Some runs exist only for a day.  Others runs are permanent due to the steady flow of packages between locations.  A permanent run is called an assigned run. As demand grows, FXG creates additional assigned runs.  Once created, FXG notifies CSPs that the assigned run is available for any CSP interested to apply so the newly created run may be assigned to a CSP.

18.    The primary way a CSP grows its business with FXG is by obtaining more runs.  In every CSP contract, FXG and the CSP agree upon established rules and procedures by which a new assigned run will be awarded.  This allows every CSP to expect the same process every time FXG makes a new assigned run available.

19.    Typically, the truck of a CSP that has the most points receives the assigned run.  Trucks that run assigned or unassigned runs earn points for each day.  Trucks can also earn points for positive safety inspections and during peak season.  As such, the awarding of an assigned run should be based on merit.

20.    MOWER's responsibility as Senior Linehaul Manager was to announce and award new assigned runs according to the process agreed upon by FXG and the CSPs as well as ensure the fairness and integrity of the process.

21.    Instead, MOWER ensured MURDOCK's companies received at least two runs in violation of FXG policies and procedures.

22.    At some time in or about 2014, MURDOCK's trucking company, WM, was legitimately awarded a temporary FedEx Freight run from Salt Lake City to Pennsylvania to Memphis ("SLC-Penn-Memphis run").  Thereafter, MOWER determined that based on

4

FXG policies, he, as the Senior Linehaul Manager, should have posted this run as an assigned (dedicated) run so that other contracted service providers could apply and compete for this run. To benefit MURDOCK, MOWER never posted this run and has allowed WM and other MURDOCK trucking companies to continue to operate this run as an unauthorized assigned run for approximately five years.

23.     In or about August of 2014, WM was running a temporary unassigned run from Salt Lake City, Utah to Twin Falls, Idaho. As part of the bribe to obtain preferential treatment, MOWER assigned this run directly to WM, bypassing the normal FXG posting and competition procedures which would have allowed other trucking companies to bid or compete for the run. WM would not have been awarded this run through the traditional posting procedures if MOWER would have posted this run as required by FXG policy. WM, and subsequently, Clear Line, have operated this run for approximately the past five years.

24.     Without MOWER's assistance, MURDOCK would not have been able to obtain routes as he did.

### Hiding the True Growth of the Businesses

25.     Second, MOWER helped MURDOCK grow his businesses larger than FXG allowed by submitting false information to FXG.

26.     Generally, FXG limits the number of semi-trucks ("tractors") a CSP owner may have service runs originating from the same hub to fifteen. A CSP may seek an exception to have more.

27.    FXG does this for many reasons. It protects FXG from becoming too dependent on one CSP in a given area. It allows FXG to spread opportunities available among more local trucking companies. It grants FXG access to more trucking resources that can support its transportation network.

28.    FXG depends on its senior linehaul managers to prevent CSPs from growing too large at a single hub. When a CSP gets too big at a particular hub, FXG refers to this as over-scale.

29.    Rather than follow company protocol, MOWER and MURDOCK regularly and systematically concealed MURDOCK's true ownership interests and control of several CSPs from FXG. By doing so, MURDOCK's companies operated approximately 29 runs originating from the North Salt Lake FXG hub.

30.    FXG CSPs are required to submit Annual Compliance Reports, certifying that they have updated their CSP Entity Profile. As part of the scheme to defraud, from 2016 through 2019, MURDOCK falsely certified that he had updated his CSP Entity Profile claiming that he had no interest in any other companies that did business with or had contracts with FXG.

**Boosting Miles**

31.    Third, using MOWER's position, MURDOCK and MOWER falsified mileage reports so that FXG paid MURDOCK's companies more than they were entitled.

32.    A CSP earns money by completing runs for FXG. The total weekly mileage of the runs completed by a CSP is multiplied by a dollar amount per mile. Thus, the more miles driven, the more money earned.

6

33.     MOWER on occasions would inflate, or boost, the number of weekly miles driven by one of more of MURDOCK's companies and submit the boosted numbers to FXG, causing FXG to overpay MURDOCK.

34.     On March 28, 2018, MOWER sent the following text message to MURDOCK:

> "I just processed a bunch of adjustments for Wm and MSD.  I threw in some extra miles on the WM adjustments to help you out."

On the same date, MURDOCK replied:

> "Thank you very much appreciated (fist emoji)".

### Results of the Fraud

35.     By fraudulently obtaining assigned runs, allowing continuous running of unauthorized assigned runs, actively obscuring business ownership and growth and falsely reporting miles to gain unearned income, MURDOCK's companies received approximately 19 million dollars in FXG revenue over the past 5 years.  During that same time period, MURDOCK paid bribes to MOWER of at least $50,000.00

### COUNTS 1-5
18 U.S.C. §§ 1343 and 2
(Wire Fraud)

36.     The Grand Jury incorporates the allegations in paragraphs 1 through 35 above as if fully alleged herein.

37.     On or about the dates listed below, in the District of Utah and elsewhere, WILLIAM SHAYNE MURDOCK and RYAN MOWER,

7

defendants herein, having devised and intending to devise a scheme and artifice to

defraud, and for obtaining money and property by means of false and fraudulent

pretenses, representations, and promises, and for the purpose of executing said scheme

and artifice to defraud, did cause to be transmitted in interstate commerce by means of

wire communication certain writings, signs and signals, each such use of wire

communication being a separate count of this Indictment, all in violation of 18 U.S.C.

§§ 1343 and 2.

| Count | Date | Interstate Wire Transaction |
|-------|------|------------------------------|
| 1 | 12/18/17 | Check dated December 15, 2017 from WM Transportation Inc.'s Lewiston State Bank account ending in 9645 in the amount of 2,000, deposited by MOWER on or about December 18, 2017, into MOWER's America First Credit Union account ending in 7951-1. |
| 2 | 2/5/18 | Check incorrectly dated February 5, 2017 from WM Transportation Inc.'s Lewiston State Bank account ending in 9645 in the amount of $1,000 which was deposited by MOWER on or about February 5, 2018, into MOWER's America First Credit Union account ending in 7951-1. |
| 3 | 5/25/18 | Check incorrectly or post-dated May 25, 2018 from WM Transportation Inc.'s Lewiston State Bank account ending in 9645 in the amount of $2,000 which was deposited by MOWER on or about May 24, 2018, into MOWER's America First Credit Union account ending in 7951-1. |
| 4 | Spring 2019 | Submission of Annual Compliance Report by wire transmission to FXG corporate office. |
| 5 | 3/28/18 | Text messages exchanged between MOWER and MURDOCK regarding falsified extra miles for WM Transportation. |

//

8

## COUNT 6
18 U.S.C. § 1956(a)(1)(A)(i)
(Promotional Money Laundering)

38.     The factual allegations set forth in paragraphs 1-35 of this Indictment are

incorporated by reference and re-alleged as though fully set forth herein.

39.     On March 9, 2016, within the Central Division of the District of Utah and

elsewhere,

### WILLIAM SHAYNE MURDOCK

the defendant herein, did knowingly conduct and attempt to conduct the following

financial transactions affecting interstate commerce, to wit, payment from WM

Transportation to New Growth Capital LLC, to acquire ownership interest in Troon

Transportation.  MURDOCK issued check number 13410 in the amount of $130,402.03

from WM Transportation's Lewiston State Bank account ending in 9645 to New Growth

Capital LLC., which transaction involved the proceeds of specified unlawful activity, that

is, wire fraud (18 U.S.C. § 1343) and money laundering (18 U.S.C. §§ 1956 and 1957),

with the intent to promote the carrying on of such specified unlawful activity and that

while conducting and attempting to conduct such financial transactions, knowing that the

property involved in the financial transactions represented the proceeds of some form of

unlawful activity, all in violation of 18 U.S.C. §§ 1956(a)(l)(A)(i) and 2(a) and 2(b).

**COUNT 7**
18 U.S.C. § 1956(a)(1)(B)(i)
(Concealment Money Laundering)

40.     The factual allegations set forth in paragraphs 1-35 of this Indictment are incorporated by reference and re-alleged as though fully set forth herein.

41.     On or about April 24, 2017, within the Central Division of the District of Utah and elsewhere,

WILLIAM SHAYNE MURDOCK

the defendant herein, did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, to wit, a Wells Fargo Bank Account ending in 6640, that MURDOCK held with others, received an electronic transfer of $100,000.00 from Clear Line Transportation.  Later that same date $100,000.00 was transferred from that account to MURDOCK'S Wells Fargo Bank Account ending in 3022, a personal account held with M.M.  Also on that same date, M.M. issued a check from Wells Fargo Bank Account ending in 3022, in the amount of $95,000.00 which was deposited into WM Transportation's Lewiston State Bank Account ending in 9645, which transaction involved the proceeds of specified unlawful activity, that is, wire fraud (18 U.S.C. § 1343) and money laundering (18 U.S.C. §§ 1956 and 1957), knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction, knowing that the

10

property involved in the financial transaction represented the proceeds of some form of unlawful activity, all in violation of 18 U.S.C. §§ 1956(a)(l)(B)(i) and 2(a) and 2(b).

**Counts 8-10**
18 U.S.C. § 1957 and 2(b)
(Money Laundering - Spending)

42.     The factual allegations set forth in paragraphs 1-25 of this Indictment are incorporated by reference and re-alleged as though fully set forth herein.

43.     On or about the dates listed below, in the Central Division of the District of Utah and elsewhere,

WILLIAM SHAYNE MURDOCK,

defendant herein, did knowingly engage and attempt to engage in the following monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000.00, that is the withdrawal, transfer, exchange of U.S. currency, and deposit of funds, such property having been derived from the specified unlawful activity, that is, the proceeds of Wire Fraud in violation of 18 U.S.C. § 1343, all in violation of Title 18 U.S.C. §§ 1957 and 2(b):

| COUNT | DATE<br>(On or About) | MONETARY TRANSACTIONS |
|:-----:|:----------------------|:----------------------|
| 8 | March 10, 2016 | Check 13411 in the amount of $29,057.00 from Lewiston State Bank to pay off the loan on a tractor. |
| 9 | May 4, 2018 | Check 20396 in the amount of $40,000.00 from Lewiston State Bank to Clear Line Transportation to repay a loan between trucking companies. |

11

| 10 | March 9, 2016 | Withdrawal from WM Transportation's Lewiston State Bank account ending in 9645 via check 13410 in the amount of $130,402.03 to New Growth Capital LLC, to acquire ownership interest in Troon Transportation. |
|---|---|---|

## NOTICE OF INTENT TO SEEK FORFEITURE

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of any offense in violation of 18 U.S.C. § 1343, as set forth in this Indictment, the defendant shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the scheme to defraud.  The property to be forfeited includes, but is not limited to, the following:

- Any and all ownership interest including shares of stock held in the name of William Shayne Murdock or WM Transportation, Inc. in Troon Transportation, Inc.;
- Real property located at 325 Edgehill Dr., Providence, Utah 84332-9426;
- A money judgment equal to the value of any property, real or personal, constituting or derived from proceeds traceable to the scheme to defraud and not available for forfeiture as a result of any act or omission of the defendant(s) for one or more of the reasons listed in 21 U.S.C. § 853(p); and
- Substitute property as allowed by 21 U.S.C. § 853(p) via 28 U.S.C. § 2461(c).

Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of any offense in violation of 18 U.S.C. §§ 1956 and/or 1957, the defendants shall forfeit to the United States of America any property, real or personal, involved in such violations, and any property traceable to such property.  The property to be forfeited includes, but is not limited to the following:

- Any and all ownership interest including shares of stock held in the name of William Shayne Murdock or WM Transportation, Inc. in Troon Transportation, Inc., a Utah Corporation;
- A money judgment equal to the value of all property involved in the money laundering and any property traceable to such property and not available for

forfeiture as a result of any act or omission of the defendant(s) for one or more of the reasons listed in 21 U.S.C. § 853(p); and

▪ Substitute property as allowed by 21 U.S.C. § 853(p) via 18 U.S.C. § 982(b).

GRAND JURY'S PROBABLE CAUSE FINDING REGARDING FORFEITURE

The grand jury finds probable cause to believe that:

1)    William Shayne Murdock has committed the crimes specified in the above forfeiture notice;

2)    The following property is 1) constituted or derived from proceeds traceable to the wire fraud scheme, or 2) involved in money laundering or property traceable to property involved in money laundering; and

3)    In the event of Mr. Murdock's conviction such property would be subject to forfeiture:

▪ William Shayne Murdock or Wm Transportation, Inc.'s interest, including shares of stock held and the right to receive distributions, in Troon Transportation, Inc.

A TRUE BILL:

/S/

_____
FOREPERSON OF THE GRAND JURY

JOHN W. HUBER
United States Attorney

_____
KEVIN L. SUNDWALL
Assistant United States Attorney